## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE BOX INVESTMENTS LLC
d/b/a Asad's Hot Chicken
2508 W. Main St.
Norristown, PA 19403

      *Plaintiff*,

     v.

MOHAMED EMAM
27 E. Central Ave.
Paoli, PA 19301
     and
MO HOT CHICKEN LLC
d/b/a MO Hot Chicken
825 W. Main Street
Landsdale, PA 19446

     *Defendants*.

CIVIL ACTION

No.: _____

## CIVIL ACTION COMPLAINT

Plaintiff, The Box Investments LLC d/b/a Asad's Hot Chicken (hereinafter "Plaintiff"), hereby complains as follows against the above-captioned Defendants.

## INTRODUCTION

1.    Plaintiff brings this action to seek injunctive relief and monetary damages arising out of the substantial and irreparable injury it has suffered at the hands of a former employee, Defendant Mohamed Emam ("Emam"), who resigned his job on or about November 22, 2025, only to start a business as a direct competitor, Defendant MO Hot Chicken LLC d/b/a MO Hot Chicken ("MO") (Emam and MO are sometimes collectively referred to as "Defendants"), in violation of his restrictive covenant agreement. Emam has also engaged in misappropriation of Plaintiff's confidential information and trade secrets he obtained, while he was a manager

employed by Plaintiff, as a shortcut to gaining an advantage for himself and MO. Such flagrant violation of contractual obligations, much less breach of the duty of loyalty, cannot be countenanced. Plaintiff is entitled to injunctive relief and actual damages for Eman's willful violation of his restrictive covenants, and Defendants' misappropriation of Plaintiff's trade secrets.

## JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action asserts a claim under laws of the United States, namely the Defend Trade Secrets Act (DTSA") (18 U.S.C. §§ 1836(b), 1839 *et seq.*).

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.      Jurisdiction and Venue are also proper pursuant to Plaintiff's and Emam's Employment & Non-Disclosure Agreement ("Agreement"). *See* Exhibit A, ¶ 12.

## THE PARTIES

6.     Plaintiff is a limited liability company organized under the laws of the Commonwealth of Pennsylvania and its principal place of business is located at 2508 W. Main St., Norristown, PA 19403.

7.     At all relevant times, Emam has been and is a resident and citizen of the Commonwealth of Pennsylvania who resides at the above captioned address.

8.     MO is a limited liability company organized under the laws of the Commonwealth of Pennsylvania and its principal place of business is located at the above captioned address.

## FACTS COMMON TO ALL COUNTS
### Plaintiff's Business

9.     Plaintiff owns and operates chicken retail restaurants, doing business as "Asad's Hot Chicken." Presently, there are nearly a dozen locations owned and operated by and through Plaintiff, in the Commonwealth of Pennsylvania and the State of New Jersey.

10.     Due to Plaintiff's unique recipes; customized products it offers to the public; and proprietary information, Plaintiff requires its management employees to execute the Agreement.

11.     Plaintiff's products are based on a proprietary and confidential recipe, particularly for its chicken tenders. The taste and preparation method are unique, fully secret, and have been validated by thousands of customers, which is rare in the U.S. fast-food market.

## Emam's Employment with Plaintiff

12.     On or about June 18, 2025, Emam started his employment with Plaintiff as a Manager at its 2508 W Main St, Norristown, PA 19403 location.

13.     As a condition of and in consideration of new employment, Plaintiff required Emam to execute the Agreement (Exhibit A).

14.    The Agreement contains, *inter alia,* confidentiality obligations, as well as covenants not to compete.

15.    Specifically, the Agreement provides in pertinent part as follows:

5.    <u>Confidential Information</u>. Employee recognizes and acknowledges that by reason of Employee's employment by and service to the Employer, Employee will have access to confidential information of the Employer and its affiliates including, without limitation, information and knowledge pertaining to products, services, customer or vendor information, pricing and business information, costs of services, contact information of past or current affiliates, products, sales methods or systems, ideas, plans, proprietary information, advertising information, Employer's business model, licensing, designs, technology, sales data, employee data or personnel information, supplier or vendor data, relationships between Employer and other third parties, templates or forms used by Employer, and other financial information (collectively, "Confidential Information"). Employee acknowledges that such Confidential Information is a valuable and unique asset and covenants that Employee will not, either during or after the term of this Agreement, disclose any such Confidential Information to any person for any reason whatsoever (except as his duties may require) without the prior written authorization of Employer's executive management and ownership, unless such information is in the public domain through no fault of Employee or except as may be required by law. Upon the termination of his employment for any reason whatsoever, Employee shall promptly return any and all Confidential Information, and all copies thereof, to Employer, and shall certify in writing that Employee has not retained any Confidential Information in any form.

*See* Exhibit A, ¶ 5.

16.    Paragraph 8 of the Agreement provides as follows:

8.    <u>Non-Competition</u>. You agree that for a period of two (2) years following the termination of your employment (voluntarily or involuntarily), you will not work for, own, operate, advise about, invest within, or perform services of any kind, directly or indirectly, for a "competitor" within 50 miles of any location you have worked for Employer. A "competitor" as defined herein shall include any restaurant-related business or enterprise that primarily focuses on serving chicken, hot chicken, fried chicken, chicken sandwiches, or any chicken products whatsoever. "Primarily" as defined herein shall mean that: (a) the restaurant-related business advertises itself as focusing in chicken products; or (b) more than 40% of the menu is comprised of chicken products; or (c) more than 40% of the restaurant-related entity's revenue or expected revenue shall come from chicken-related products.

*See* Exhibit A, ¶ 8.

17.     As a Manager at Plaintiff's Norristown location, Emam had access to Plaintiff's Confidential Information (as defined in the Agreement, set forth *supra*), including but not limited to trade secrets, recipes, pricing and sales information, gross profit and profit margin information, and Plaintiff's strategic and marketing material throughout Emam's employment.

18.     Plaintiff's Confidential Information is not information which is readily available to the public.

### Plaintiff's Efforts to Protect Its Confidential Information

19.     Plaintiff takes measures to ensure that its assets, which include Confidential Information, are protected.

20.     Plaintiff's Confidential Information and trade secrets are highly valuable to Plaintiff, secured in a variety of ways, and are accessible only to a limited number of Plaintiff's employees.

21.     In an effort to protect its Confidential Information, access is limited to authorized manager-level personnel only. Managers are assigned administrator access to control orders, discounts, customer data and payments. All systems are protected by passwords, PINs, and verified phone numbers.

22.     In further effort to protect its Confidential Information, Plaintiff required Emam to execute the Agreement as a condition of his employment.

23.     With respect to Plaintiff's Confidential Information, the Agreement required Emam to *inter alia:* recognize and acknowledge that he had access to it; that it was a valuable and unique asset; that he would not disclose it to any person for any reason without prior written

permission; and that he was to not retain any of it following the termination of his employment. *See* Exhibit A, ¶ 5.

24.     If a competitor of Plaintiff gained access to its Confidential Information and trade secrets, that competitor would gain a significant advantage in the marketplace.

25.     Access to Plaintiff's Confidential Information and trade secrets would, for example, allow a competitor to undercut Plaintiff's pricing, and would allow the competitor to reap the benefits of the substantial costs and efforts Plaintiff placed into developing its Confidential Information and trade secrets, without incurring any costs.

**Emam Resigns His Employment**

26.     On or about November 22, 2025, Emam resigned from his employment with Plaintiff. Emam misrepresented his plans and informed Plaintiff that he was going to work for a construction company.

27.     In reality, in or about November of 2025, Emam opened up a competing restaurant, MO, at 825 W. Main Street Landsdale, PA 19446.

28.     The MO restaurant Emam opened at this address is located 9.6 miles from the Norristown location where he was employed by Plaintiff.

29.     Filings with the Secretary of State reflect that MO was formed as early as 8/31/25, while Emam was still employed by Plaintiff.

30.     MO uses virtually the same products and recipes as Plaintiff, at a restaurant located merely 9.6 miles from the location where he worked for Plaintiff.

31.     It is clear that Emam breached the Agreement in that he is using Plaintiff's Confidential Information in connection with his operation of MO, in the course of his new employment for a direct competitor.

32.     Emam also breached the non-competition portion of the Agreement, in operating a virtually identical competing business less than 50 miles from where he worked for Plaintiff.

33.     Plaintiff reasonably fears that it will lose customers based upon Emam's misuse of Plaintiff's Confidential Information and trade secrets, in order to benefit his new employer/ business. This is a clear contractual violation as well as a violation of the law.

34.     Plaintiff's Confidential Information and trade secrets would be of great value to Plaintiff's competitors and Emam could use his knowledge of Plaintiff's recipes, marketing and pricing strategies and profit margins, to gain customers for his new employer/business by undercutting Plaintiff.

35.     As a direct result of Defendants' misuse of Plaintiff's Confidential Information and trade secrets, Plaintiff has lost, and can reasonably expect to lose, customers.

36.     As a direct result of Emam's violation of the non-competition agreement, Plaintiff has lost, and can reasonably expect to lose, customers.

37.     Defendants' competing location is approximately 9.6 miles from Plaintiff's store, serving the same community. Plaintiff has observed customers shifting to MO, and since its opening, Plaintiff's sales have declined, which Plaintiff attributes to the use of copied recipes, negatively impacting Plaintiff's business.

38.     The loss of such business will continue to cause Plaintiff significant damages.

39.     Emam and MO's actions threaten Plaintiff with material harm.

40.     Exhibits B and C hereto are sworn statements from two of Plaintiff's general managers. As can be seen, both of these individuals conclude that: (i) based upon their firsthand comparisons, some of MO's food; sauce; menu; and service are substantially similar to

Plaintiff's; and (ii) their belief is that Emam is using the knowledge he acquired while employed at Plaintiff and is implementing it at MO, to his and MO's advantage.

41.     This clearly constitutes a breach of Emam's restrictive covenants, as well as Defendants' misappropriation of Plaintiff's trade secrets.

42.     One of these managers has also observed that Plaintiff has suffered a noticeable loss of business, including loss of regular customers, ever since MO opened. *See* Exhibit C, ¶ 13.

43.     Attached as Exhibits D and E are sworn statements from two of Plaintiff's regular customers, who have made firsthand comparisons, and observed that some of MO's food; sauce; menu; and service are substantially similar to Plaintiff's.

## COUNT I – INJUNCTIVE RELIEF
### - Against All Defendants –

44.     The averments of the forgoing paragraphs are incorporated by reference, as if fully set forth herein.

45.     By virtue of the foregoing, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

46.     Unless Defendants are temporarily, preliminarily and permanently enjoined from the foregoing conduct, Plaintiff will continue to be irreparably harmed by the:

   a.  Disclosure of Confidential Information and trade secrets which have been misappropriated by Emam and utilized by Defendants to compete against Plaintiff, and which are solely the property of Plaintiff;

   b.  Loss of loss of business relationships and business reputation;

   c.  Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable; and

d.  Loss of goodwill and the attendant loss of unknown amounts of future business.

47.    MO continues to employ Emam, and Defendants continue to misappropriate Plaintiff's Confidential Information and trade secrets, resulting in ongoing damage and harm to Plaintiff's legitimate business interests and contractual rights, which can be remedied only by the filing and prosecution of this action.

48.    Plaintiff has no adequate remedy at law.

49.    In addition to the other relief sought herein, Plaintiff requests the following equitable relief via an Order requiring that:

a.  Emam be immediately enjoined and restrained from continuing his employment with MO, or to engage in any activities that contravene the Agreement;

b.  MO be immediately enjoined and restrained from continuing to employ Emam or to engage in any activities that contravene the Agreement between Plaintiff and Emam;

c.  Defendants be immediately enjoined and restrained from continuing to misappropriate Plaintiff's Confidential Information and trade secrets;

d.  Defendants, and any and all persons acting in concert or participation with Defendants, including any agent, employee, officer or representative of Defendant MO, be further ordered that, within 48 hours of notice to Defendants:

i.    to identify with specificity any and all information (whether same is in original, copied, computerized, handwritten, or any other reproduced form) within their possession, custody and control that

pertains to Plaintiff, Plaintiff's business dealings, business methods or strategies, prices, packaging, profitability, sales representatives and/or other Confidential Information and trade secrets;

ii.    print and return to Plaintiff all such information; and,

iii.    purge any such information so that same can be neither retrieved nor reproduced;

e.    Defendants are jointly and severally liable for the attorneys' fees and costs Plaintiff incurs in obtaining relief pursuant to ¶ 9 of the Agreement (where Emam is concerned) and pursuant to the 17 "third-party exception" to the "American Rule" codified in Restatement (Second) of Torts §914(2) (where MO is concerned); and

f.    Pursuant to ¶ 9 of the Agreement (where Emam is concerned), the duration of the aforesaid restrictive covenants be extended for a two (2) year period following the date on which Emam conclusively demonstrates that his violations of said covenants have ceased.

## COUNT II – TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT ("DTSA") (18 U.S.C. §§ 1836(b), 1839 *et seq.*) <u>- Against All Defendants –</u>

50.    The averments of the forgoing paragraphs are incorporated by reference, as if fully set forth herein.

51.    Plaintiff is the owner of certain valuable trade secrets relating to Confidential Information (as defined in the Agreement), including but not limited to trade secrets, recipes, pricing and sales information, gross profit and profit margin information, and Plaintiff's strategic and marketing material.

52.     The information listed above derives independent economic value from not being generally known to, and not being readily ascertainable through proper means, by another person who can obtain economic value from the disclosure or use of the information.

53.     Therefore, these materials constitute trade secrets as defined in the DTSA.

54.     Plaintiff's confidential and propriety trade secrets are of substantial economic value and have conferred a competitive advantage on Plaintiff. These Plaintiff trade secrets relate to products and/or services provided by Plaintiff that are used in interstate commerce, including in this instance, commerce in the Commonwealth of Pennsylvania and the State of New Jersey.

55.     Emam gained access to Plaintiff's trade secrets in the course of his employment with Plaintiff by virtue of his job duties as a Manager.

56.     Upon information and belief, Emam has improperly used and disclosed Plaintiff's trade secrets and will inevitably continue to use and disclose Plaintiff's trade secrets.

57.     Upon information and belief, MO has improperly used Plaintiff's trade secrets and will inevitably continue to use and disclose Plaintiff's trade secrets.

58.     Plaintiff has taken reasonable steps to maintain secrecy of its trade secrets by including, but not limited to, requiring employees with access to such information to execute an Agreement that prohibits the disclosure of Plaintiff's Confidential Information and trade secrets; restricting access to authorized manager-level personnel only; and protecting systems by passwords, PINs, and verified phone numbers.

59.     As a direct and proximate result of Emam's and MO's current and continued misappropriation of Plaintiff's trade secrets, Plaintiff has suffered imminent and irreparable harm and loss of other damages, including lost revenue and profits.

**COUNT III – THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT ("PUTSA")**
**12 Pa.C.S. §§ 5301, *et seq.***
**- Against All Defendants –**

60.     The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

61.     Plaintiff's Confidential Information (as defined in the Agreement) constitutes trade secrets that derive independent economic value from not being generally known or readily available to Plaintiff's competitors.

62.     MO, as a direct competitor of Plaintiff, is an entity which can obtain significant economic value from the disclosure or use of Plaintiff's trade secrets.

63.     Plaintiff's proprietary information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy, including, but not limited to, requiring employees with access to such information to execute an Agreement that prohibits the disclosure of Plaintiff's Confidential Information and trade secrets; restricting access to authorized manager-level personnel only; and protecting systems by passwords, PINs, and verified phone numbers.

64.     In his role as a former Manager Plaintiff, Emam had a duty to maintain the secrecy of Plaintiff's trade secrets.

65.     Upon information and belief, Emam violated his duties to Plaintiff by retaining possession of Plaintiff's trade secrets subsequent to his resignation and using them to his advantage in obtaining new employment at MO, to the benefit of MO.

66.     Through these intentional acts, Emam and MO acted willfully and maliciously in misappropriating Plaintiff's trade secrets.

12

67.     Plaintiff has suffered now presently unquantifiable monetary damages as a result of Emam's and MO's misappropriation of its trade secrets.

<u>**COUNT IV – CIVIL CONSPIRACY**</u>
<u>**- Against All Defendants –**</u>

68.     Plaintiff and MO were and are at all times material hereto competitors.

69.     MO and Emam were and are at all times material hereto aware of the terms and conditions of the between Plaintiff and Emam, and of the common law fiduciary duties owed by Emam to Plaintiff.

70.     In order to advance their own interests, and with deliberate intent to cause harm to Plaintiff, MO and Emam combined or agreed with intent to, *inter alia*:

    a.  enter into an employment arrangement despite same being prohibited under the Agreement;

    b.  misappropriate Plaintiff's Confidential Information and/or trade secrets;

    c.  utilize Emam's work hours, and access to Plaintiff's resources, to advance their own agendas by negotiating their own employment arrangement;

    d.  developing strategies to compete unfairly with Plaintiff; and

    e.  such other deeds and misdeeds which shall be disclosed during discovery and/or proved at trial.

71.     Defendants had a common purpose and design, and carried out their deliberate, premeditated and overt scheme in order to at once achieve personal monetary gain while at the same time causing Plaintiff desired and intended damage in the form of monetary losses, depreciation of good will and reputation, erosion of resources and undesired utilization of its time, manpower, energy and resources via efforts to discover, mitigate and attempt to stop the harm caused by their actions.

72.    MO's actions and inactions were in whole or in part motivated by: a) its hope that hiring Emam away from Plaintiff would strengthen its own business opportunities; b) its hope that hiring Emam away from Plaintiff would weaken Plaintiff's business opportunities; c) its desire to secure Emam's access and ability to misappropriate Plaintiff's valuable Confidential Information and/or trade secrets, which it could then use for its own benefit while at the same time disadvantaging Plaintiff; d) its desire to learn Plaintiff's business plans for the immediate future, which it intended to and is attempting to usurp; and, e) a belief that hiring Emam would on numerous levels cause Plaintiff damages that would enable it to gain a competitive advantage over Plaintiff.

73.    Emam's actions and inactions were in whole or in part motivated by: a) his desire to obtain employment with MO, which he viewed as superior to the employment he enjoyed with Plaintiff; b) his desire to secure pay that he knew he would not receive if he honored his common law and contractual duties/obligations to Plaintiff; and, c) his ability to increase his earnings with MO via use of the Confidential Information and/or trade secrets he had access to during his employment with Plaintiff; and, d) his use of the Confidential Information and/or trade secrets he misappropriated during his employment with Plaintiff.

74.    Plaintiff believes, and therefore avers, that Defendants have utilized Plaintiff's Confidential Information and/or trade secrets to further their own business interests and to secure a competitive advantage over Plaintiff.

75.    Defendants' actions caused harm to Plaintiff.

76.    Defendants' actions were without justification and/or legitimate purpose.

77.    As a result of Defendants' actions, Plaintiff has suffered, and continues to suffer, monetary losses and other damages that cannot be fully compensated by legal relief.

## COUNT V – BREACH OF FIDUCIARY DUTY OF LOYALTY
### - Against Defendant Emam –

78.     The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

79.     Pursuant to Emam's employment relationship with Plaintiff as a Manager, he was placed in a position of trust regarding Plaintiff's operations, Confidential Information and trade secrets.

80.     Based upon his employment relationship and position of trust with Plaintiff, Emam owed a fiduciary duty to act solely for Plaintiff's benefit.

81.     Emam formed MO in order to compete with Plaintiff, while Emam was still employed by Plaintiff.

82.     Emam resigned his position with Plaintiff as Manager on or about November 22, 2025 and, shortly thereafter, became the owner/operator of MO, a direct competitor located approximately 9.6 miles from the Plaintiff location where Emam had worked.

83.     Upon information and belief, while still employed with Plaintiff, Emam acted in disregard of the confidentiality and non-competition covenants contained in his Agreement and acted to disclose and/or will inevitably disclose or use Plaintiff's Confidential Information and trade secrets for the benefit of his new employer, MO.

84.     Emam's conduct as alleged was willful and malicious and constitutes a breach of the fiduciary duty of loyalty that Emam owed to Plaintiff.

85.     As a direct and proximate result of Emam's willful, malicious and intentional conduct, Plaintiff has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

## COUNT VI – BREACH OF CONTRACT – NON-COMPETITION
### - Against Defendant Emam –

86.     The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

87.     On or about June 18, 2025, Emam entered into the Agreement with Plaintiff for good and valuable consideration and as a condition of his employment.

88.     Emam had a duty to abide by the non-competition covenant in the Agreement.

89.     Based on the actions described herein, Emam breached his duty by going to work for a direct competitor, MO, shortly after his last day of work at Plaintiff.

90.     Moreover, Emam accepted a position as the owner/operator of MO and/or formed MO that is approximately 9.6 miles from the Plaintiff location where Emam was formerly employed by Plaintiff as a Manager.

91.     As a direct and proximate result of Emam's wrongful conduct described herein, Plaintiff has sustained and will continue to sustain immediate and irreparable harm and injury for which there is no adequate remedy at law.

92.     In addition to the irreparable injury described above, as a direct and proximate result of Emam's wrongful conduct, Plaintiff has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

## COUNT VII – BREACH OF CONTRACT – CONFIDENTIALITY
### - Against Defendant Emam –

93.      The averments of the foregoing paragraphs are incorporated by reference, as if fully set forth herein.

94.     Emam has a duty to abide by confidentiality provisions in the Agreement.

95.    Based on the actions described herein, Emam breached his duty under the Agreement with Plaintiff by disclosing and/or inevitably disclosing Plaintiff's Confidential Information and trade secrets to his new employer.

96.    As a direct and proximate result of Emam's wrongful conduct described herein, Plaintiff had sustained and will continue to sustain immediate and irreparable harm and injury for which it has no adequate remedy at law.

97.    In addition to the irreparable injury described above, as a direct and proximate result of Emam's wrongful conduct, Plaintiff has suffered and/or will suffer actual and/or consequential damages including loss of competitive business advantage, opportunity and/or expectancy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, The Box Investments LLC d/b/a Asad's Hot Chicken, prays for judgment as follows:

A.    For an order requiring Defendants to show cause, if any they have, why they should not be enjoined as set forth below, during the pendency of this action;

B.    For damages in an amount according to proof at trial;

C.    For restitution and/or disgorgement of all money, profits, compensation or property Defendants have acquired or will acquire by any wrongful or unlawful means or as a result of their misappropriation of Plaintiff's trade secrets and Confidential Information, breach of loyalty, and breaches of contract;

D.    For damages in an amount to be determined as appropriate to punish Defendants and deter like conduct;

E.      Preliminarily and permanently enjoin Defendants from possessing, using, or disclosing Plaintiff's Confidential Information and trade secrets on their own behalf or for the benefit of any entity including, but not limited to, MO and/or any future employer, for as long as that information remains confidential and proprietary to Plaintiff;

F.      Preliminarily and permanently enjoin Emam from working for any Plaintiff competitor including, but not limited to, MO and/or any future employer, within 50 miles of any Plaintiff branch for 24 months, and from soliciting Plaintiff employees for 24 months, whether directly or indirectly;

G.      For an order requiring Emam to abide by the covenants in his Agreement, including the covenant of confidentiality, non-competition and non-solicitation, according to the terms set forth in the Agreement;

H.      For prejudgment and post judgment interest at the maximum legal rate, as provided by applicable law, as an element of damages which Plaintiff has suffered as a result of the wrongful acts complained of herein;

I.      For reasonable attorneys' fees and costs; and

J.      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Date: December 22, 2025

# Exhibit A

## EMPLOYMENT & NON-DISCLOSURE AGREEMENT

This Employment & Non-Disclosure Agreement (the "Agreement") shall be deemed effective on the sooner of execution below or June 18, 2025. The Agreement is by and between Asad's Hot Chicken, ("Employer") and the employee signing this Agreement below ("Employee"). Employee and Employer may hereinafter be referred to as "Parties."

Background. Employer is a specialized restaurant business attempting to expand, generate unique recipes, and to offer a variety of customized products to the public. Employer seeks to continue its business growth and to protect its proprietary information and good will. The contractual terms of this Agreement shall be deemed in effect immediately.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements hereinafter set forth, the Parties hereto, intending to be legally bound hereby, agree as follows:

1.      Consideration for Agreement. Employer and Employee have agreed that in consideration of the covenants and promises made hereunder by Employee, Employee shall receive financial consideration agreed upon by the Parties and be hired and/or employed by Employer.

2.      Employment. Employer hereby employs Employee, and Employee hereby accepts such employment and agrees to perform his duties and responsibilities hereunder, in accordance with the terms and conditions hereinafter set forth.

2.1      Employment Term. Nothing contained herein shall be interpreted or operate to abridge Employer's right to terminate Employee at any time and for any reason at Employer's sole discretion. Employee is employed at all times in an at-will capacity.

2.2      Duties and Responsibilities. Employee represents and covenants to Employer that: (a) Employee will work to the best of Employee's ability in performance of any and all duties of Employee; (b) Employee is not subject to any other employment agreements that could limit or prohibit Employee's employment with Employer; (c) Employee will not use Employer's property, equipment, products, or information for non-Employer related purposes without express written consent from Employer; (d) Employee shall not perform any services similar to or offered by Employer while in the employ of Employer for third parties not serviced by Employer without express written consent; (e) Employee will not usurp, take, or attempt to handle in any manner business opportunities that could be performed by Employer; and (f) if contacted or solicited about or concerning any service offered by Employer (by a third party), Employee shall not perform such service unless: (i) presented to Employer as an opportunity for Employer to perform; and (ii) Employer authorizes such non-employment related services in writing.

3.     <u>Expenses</u>.  Employee shall be reimbursed for the reasonable business expenses incurred by Employee and if previously authorized by Management in connection with Employee's performance of services hereunder during the Employment Term upon presentation of an itemized account and written proof of such expenses.

4.     <u>Developments</u>.  All developments, including inventions, whether patentable or otherwise, trade secrets, blue prints, processes, designs, spreadsheets, recipes, improvements, customer development, ideas and writings which directly or indirectly relate to and result from the business of Employer (the "Developments") which Employee, either by Employee's self or in conjunction with any other person or persons, has conceived, made, developed, acquired or acquired knowledge of during and through Employee's employment by the Employer or which Employee, either by Employee's self or in conjunction with any other person or persons, shall conceive, make, develop, acquire or acquire knowledge of during the Employment Term and through his employment, shall become and remain the sole and exclusive property of the Employer. Employee hereby assigns, transfers and conveys, and agrees to so assign, transfer and convey, all of Employee's right, title and interest in and to any and all such Developments and to disclose fully as soon as practicable, in writing, all such Developments to Employer.

5.     <u>Confidential Information</u>. Employee recognizes and acknowledges that by reason of Employee's employment by and service to the Employer, Employee will have access to confidential information of the Employer and its affiliates including, without limitation, information and knowledge pertaining to products, services, customer or vendor information, pricing and business information, costs of services, contact information of past or current affiliates, products, sales methods or systems, ideas, plans, proprietary information, advertising information, Employer's business model, licensing, designs, technology, sales data, employee data or personnel information, supplier or vendor data, relationships between Employer and other third parties, templates or forms used by Employer, and other financial information (collectively, "Confidential Information"). Employee acknowledges that such Confidential Information is a valuable and unique asset and covenants that Employee will not, either during or after the term of this Agreement, disclose any such Confidential Information to any person for any reason whatsoever (except as his duties may require) without the prior written authorization of Employer's executive management and ownership, unless such information is in the public domain through no fault of Employee or except as may be required by law. Upon the termination of his employment for any reason whatsoever, Employee shall promptly return any and all Confidential Information, and all copies thereof, to Employer, and shall certify in writing that Employee has not retained any Confidential Information in any form.

6.     <u>Safeguarding Employer Information & No Right to Privacy</u>. As to any electronic devices used by Employee for any work-related matters, Employee shall: (a) at all times require passcode access to the device; (b) store or maintain such devices in a safe manner, not accessible by third parties; (c) not permit anyone other than Employee to utilize such devices for any purpose; and (d) report within forty-eight (48) hours to Employer if Employee has reason to believe any device containing Employer information has been lost or stolen or if information has been compromised, hacked, stolen, or otherwise misappropriated (inadvertently or intentionally). As to hardcopy documentation, Employee shall use all reasonable efforts to maintain such documentation in a safe and non-accessible manner to third parties other than Employee.

Employee further understands that Employee does not have any right(s) to privacy for any devices, email(s), or other property used to conduct Employer business and that Employer may audit, review, or inspect such devices or information at any time, with or without notice to Employee.

7.    <u>Non-solicitation</u>. Employee hereby acknowledges and agrees that Employee has been and will continue to be exposed to a significant amount of confidential information concerning the Employer's business methods, operations, unique products, employment relationships and customers while employed under this Agreement (as well as other confidential information defined in this Agreement), that such information might be retained by Employee in tangible form or simply retained in Employee's memory, and that the protection of Employer's exclusive rights to such confidential information and the benefits flowing from it can best be ensured by means of a restriction on Employee's activities after termination of employment. At the end of Employee's employment, Employee shall return any and all such confidential information such as plans, business templates, financial information, invoicing, directives, employee or vendor data and other information, and shall certify (the "Certification") to Employer in writing, under penalty of perjury, that all such information has been returned and that neither Employee nor anyone acting on Employee's behalf has retained such information. The Certification shall be provided to Employer within seven (7) calendar days of Employee's separation from employment certifying that: (1) Employee has not retained any documentation, electronic data, or other Employer information other than related to Employee's own compensation, benefits, and personnel documentation; (2) Employee did not copy, preserve, backup, or otherwise duplicate any confidential information of Employer or provide such information to third parties; and (3) Employee is unaware of any confidential information being compromised by theft, hacking, or other misappropriation.

Employee further agrees that during Employee's period of employment and for a period of two (2) years following termination of Employee's employment (whether voluntary or involuntary and whether with or without cause), Employee shall not:

(a)  Solicit (directly or indirectly), any employee, independent contractor or other service provider of Employer.

(b)  Solicit (directly or indirectly), any vendor, third-party, or contractor that may, could or will result in any harm or loss of business to Employer.

(c)  Solicit anyone affiliated with Employer that works for or provides services to Employer.

(d)  Solicit anyone affiliated with Employer that could result in diminished work or performance to or on behalf of Employer.

(e)  Engage in any action(s), communication(s) or act(s) whatsoever directly or indirectly that could or does in fact diminish work, payments, contracts, or services performed by Employer for any of its clientele.

(f) Solicit any management, owners, or shareholders to work with, work for, or to partner in any manner with Employee.

8.    Non-Competition. You agree that for a period of two (2) years following the termination of your employment (voluntarily or involuntarily), you will not work for, own, operate, advise about, invest within, or perform services of any kind, directly or indirectly, for a "competitor" within 50 miles of any location you have worked for Employer. A "competitor" as defined herein shall include any restaurant-related business or enterprise that primarily focuses on serving chicken, hot chicken, fried chicken, chicken sandwiches, or any chicken products whatsoever. "Primarily" as defined herein shall mean that: (a) the restaurant-related business advertises itself as focusing in chicken products; or (b) more than 40% of the menu is comprised of chicken products; or (c) more than 40% of the restaurant-related entity's revenue or expected revenue shall come from chicken-related products.

9.    Legal & Equitable Relief. Employee acknowledges that the restrictions contained in Sections 4-8 (and other parts of this Agreement) hereof are reasonable and necessary to protect the legitimate interests of Employer and that any violation of such restrictions would result in irreparable injury to Employer and its affiliates. If the period of time or other restrictions specified in Sections 4-8 (or elsewhere) should be adjudged unreasonable at any proceeding, then the period of time or such other restrictions shall be reduced by the elimination or reduction of such portion thereof so that such restrictions may be enforced in a manner adjudged to be reasonable. Employee acknowledges that Employer shall be entitled to preliminary and permanent injunctive relief for a violation of any such restrictions without having to prove actual damages or to post a bond; Employer shall also be entitled to an equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which Employer may be entitled in law or equity. In the event of a violation, the period referred to in Sections 5-8 hereof shall be extended by a period of time equal to that period beginning with the commencement of any such violation and ending when such violation shall have been finally terminated in good faith. In any legal action for equitable relief or financial damages in which Employer prevails, Employee shall be required to pay all costs and reasonable attorney's fees of Employer.

10.    Survival. Notwithstanding the termination of this Agreement contemporaneously with the termination of Employee's employment, Employee's obligations under Sections 4-8 and 9 hereof shall survive and remain in full force and effect for the periods therein provided, and the provisions for equitable relief against Employee in Section 9 hereof shall continue in force.

11.    Governing Law. This Agreement shall be governed by and interpreted under the laws of the Commonwealth of Pennsylvania, excluding any principles regarding conflict of laws.

12.    Disputes; Venue. The Parties hereby agree that any disputes hereunder, including related to the termination of Employee's employment and this Agreement, shall be resolved by a bench trial, and they hereby irrevocably waive the right to a jury trial. Jurisdiction and venue shall lie solely and exclusively in the Court of Common Pleas in the County where Employer is located, and within Pennsylvania, or the United States District Court for the Eastern District of Pennsylvania, except that in the event that Employer seeks the equitable relief provided under

Section 9, it may be brought in any state or federal court having jurisdiction.

13.    <u>Notices</u>. All notices and other communications required or permitted hereunder or necessary or convenient in connection herewith shall be in writing and shall be deemed to have been given when hand delivered or mailed by registered or certified mail.

14.    <u>Contents of Agreement; Amendment and Assignment</u>.

(a)    This Agreement supersedes all prior agreements and sets forth the entire understanding among the Parties hereto with respect to the subject matter hereof and cannot be changed, modified, extended or terminated except upon written amendment approved by Employer and executed on its behalf in writing by a duly authorized officer. Without limitation, nothing in this Agreement shall be construed as giving Employee any right to be retained in the employ of Employer, and Employee specifically acknowledges that he remains an employee at will of Employer, and thus subject to discharge by Employer with or without cause and without compensation of any nature.

(b)    Employee acknowledges that from time to time, Employer may establish, maintain and distribute personnel policies, and officers or other representatives of Employer may make written or oral statements relating to personnel policies and procedures. Such policies or statements are intended only for general guidance. No policies, procedures or statements of any nature by or on behalf of Employer (whether written or oral, and whether or not contained in any employee manual or handbook or personnel policy manual), and no acts or practices of any nature, shall be construed to modify this Agreement or to create express or implied obligations of any nature to Employee.

(c)    All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, except that the duties and responsibilities of Employee hereunder are of a personal nature and shall not be assignable or delegable in whole or in part by Employee. Employer shall be permitted to assign its rights and responsibilities under this Agreement.

15.    <u>Severability</u>. If any provision of this Agreement or application thereof to anyone or under any circumstances is adjudicated to be invalid or unenforceable in any jurisdiction, such invalidity or unenforceability shall not affect any other provision or application of this Agreement which can be given effect without the invalid or unenforceable provision or application and shall not invalidate or render unenforceable such provision or application in any other jurisdiction.

16.    <u>Remedies Cumulative; No Waiver</u>. No remedy conferred upon Employer by this Agreement is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity. No delay or omission by Employer in exercising any right, remedy or power hereunder or existing at law or in equity shall be construed as a waiver thereof,

and any such right, remedy or power may be exercised by Employer from time to time and as often as may be deemed expedient or necessary by Employer in its sole discretion.

17. Agreement Updates: This agreement may be updated or amended over time if necessary. The updated version will be communicated to all relevant parties, and any changes will take effect from the date of such communication.

Intending to be immediately contractually bound, the Parties execute this Agreement below:

On Behalf of Asad's Hot Chicken

By Employee:

**Print Name:** Aziz Rahman

**Sign Name:** _____

**Title:** CEO

**Date:** 7/22/2025

**Print Name:** Mohamed Emam

**Sign Name:** _____

**Date:** 06-30-2025

**Print Name:** Asad Khan

**Sign Name:** _____

**Title:** Founder

**Date:** 7-22-2025

---

Employee Personal Details and Identification

Full Name: Mohamed Emam

Date of Birth: 8 / 20 / 73

Gender: ☑ Male   ☐ Female   ☐ Other

State ID/Driving License Number: 33885588

Phone Number: 215-667-3838

Email Address:

Address: 27 E Central Ave. Paoli PA 19301

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THE BOX INVESTMENTS LLC
d/b/a Asad's Hot Chicken

       *Plaintiff*,

   v.

MOHAMED EMAM
    and
MO HOT CHICKEN LLC

      *Defendants*.

## <u>CERTIFICATION OF KHALID POPAL</u>

1.     I am an adult individual and I understand that I am preparing and signing a certification in a federal lawsuit and that I am doing so subject to any penalties of perjury or for false swearing under state or federal law(s). The following statements are true and correct to the best of my knowledge and they are based upon my personal observations and/or knowledge.

2.     I have been employed by Asad's Hot Chicken ("Asad's") since 2023. My current title is General Manager.

3.     As General Manager of Asad's, I am fully familiar with Asad's products and business model.

4.     On 12/7/25 at approximately 5:45 PM, I went to the MO Hot Chicken ("MO") restaurant, located at 825 W. Main Street Landsdale, PA 19446, as a customer.

5.     While at MO, I observed that they offered a very similar service and menu to Asad's. MO offers a loaded fries dish with a chicken tender chopped up. This appeared to be substantially similar to Asad's menu item Numbers 4 and 6.

6.      I am not personally aware of other restaurants in this area offering a substantially similar item.

7.      MO even took the same name for this item as Asad's ("loaded fries") and uses the same or similar spice level names as Asad's.

8.      In my personal opinion, MO's sauce tasted approximately 90% similar to Asad's proprietary hot chicken sauce.

9.      MO also offers a smoothie that uses the same name used by Asad's (the "Tutti Fruitti" smoothie).

10.      MO also offers the same or similar brioche bun slider that Asad's offers.

11.      Based on my personal observations and experience, it is my belief that Mohamed Emam is using the knowledge he acquired at Asad's and is implementing it at MO, to his and MO's advantage.

12.      Based upon my industry knowledge, experience, observations and familiarity with Asad's, I formed the opinion that much of the food and service being offered by MO is substantially similar to Asad's.

13.      I certify, under penalty of perjury, that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to penalties.

14.      The undersigned understands that any intentionally false statements herein are subject to the penalties of 18 Pa. C.S. § 4904 relating to sworn and unsworn statements.

K.P

_____
Khalid Popal

Date: ___12/19/2025_____

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

THE BOX INVESTMENTS LLC
d/b/a Asad's Hot Chicken

     *Plaintiff*,

   v.

MOHAMED EMAM
   and
MO HOT CHICKEN LLC

     *Defendants*.

---

## <u>CERTIFICATION OF ASIM SHARIF</u>

1.    I am an adult individual and I understand that I am preparing and signing a certification in a federal lawsuit and that I am doing so subject to any penalties of perjury or for false swearing under state or federal law(s). The following statements are true and correct to the best of my knowledge and they are based upon my personal observations and/or knowledge.

2.    I have been employed by Asad's Hot Chicken ("Asad's") since 2023. My current title is General Manager at the Norristown location.

3.    As General Manager of Asad's, I am fully familiar with Asad's products and business model.

4.    On 12/9/25, I went to the MO Hot Chicken ("MO") restaurant, located at 825 W. Main Street Landsdale, PA 19446, as a customer.

5.    While at MO, I observed that they offered a very similar service and menu to Asad's. MO offers a loaded fries dish with a chicken tender chopped up. This was clearly taken from Asad's Menu item Number 6, which is identical.

6.      Upon information and belief, no other restaurants, at least in this area, offer a menu item like this. MO took this idea directly from Asad's.

7.      MO even took the same name for this item as Asad's ("loaded fries") and uses the same or similar spice level names as Asad's.

8.      In addition, the sauce at MO tasted exactly like Asad's sauce, which uses a unique recipe.

9.      MO also offers the same or similar smoothies and milkshakes that Asad's offers.

10.     MO also offers the same or similar brioche bun slider that Asad's offers.

11.     It is clear that Mohamed Emam is using the knowledge he acquired at Asad's and is implementing that knowledge at MO, to his and MO's advantage.

12.     Based upon my industry knowledge, experience, observations and familiarity with Asad's, I formed the opinion that much of the food and service being offered by MO is almost exactly the same, if not exactly same, as Asad's.

13.     Ever since MO opened, Asad's Norristown location has suffered a noticeable loss of business. We used to get a lot of customers from the Bangladesh community in Lansdale, as well as other regular customers. Ever since MO opened, I suddenly stopped seeing these and many other regular customers.

14.     I certify, under penalty of perjury, that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to penalties.

15.     The undersigned understands that any intentionally false statements herein are subject to the penalties of 18 Pa. C.S. § 4904 relating to sworn and unsworn statements.

Asim Sharif

Date: 12/19/2025

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE BOX INVESTMENTS LLC
d/b/a Asad's Hot Chicken

       *Plaintiff*,

    v.

MOHAMED EMAM
    and
MO HOT CHICKEN LLC

       *Defendants*.

## <u>CERTIFICATION OF GUL HOORIA</u>

1.      I am an adult individual and I understand that I am preparing and signing a certification in a federal lawsuit and that I am doing so subject to any penalties of perjury or for false swearing under state or federal law(s). The following statements are true and correct to the best of my knowledge and they are based upon my personal observations and/or knowledge.

2.      I have been a regular customer of Asad's Hot Chicken ("Asad's") since 2023. As a regular customer of Asad's, I am fully familiar with the products offered by them.

3.      On 12/9/25, I went to the MO Hot Chicken ("MO") restaurant, located at 825 W. Main Street Landsdale, PA 19446, as a customer.

4.      I purchased and ate a MO hot chicken slider. It tasted exactly the same as Asad's.

5.      I also tried MO's chicken tenders and sauce, and it was exactly the same as Asad's.

6.      The menu at MO is also almost identical to Asad's menu.

7.     Based upon my observations and familiarity with Asad's, I formed the opinion that much of the food and service being offered by MO is almost exactly the same, if not exactly same, as Asad's.

8.     I certify, under penalty of perjury, that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to penalties.

9.     The undersigned understands that any intentionally false statements herein are subject to the penalties of 18 Pa. C.S. § 4904 relating to sworn and unsworn statements.

_____
Gul Hooria

Date: _12/19/2025_____

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THE BOX INVESTMENTS LLC
d/b/a Asad's Hot Chicken

       *Plaintiff,*

    v.

MOHAMED EMAM
    and
MO HOT CHICKEN LLC

      *Defendants.*

## <u>CERTIFICATION OF JAEDEN KIM</u>

1.    I am an adult individual and understand that I am preparing and signing a certification in a federal lawsuit. The following statements are based solely on my personal observations and opinions as a customer, and not on any specialized, technical, or expert knowledge.

2.    I have been a regular customer of Asad's Hot Chicken ("Asad's") since 2023 and typically eat at Asad's approximately one to two times per month.

3.    On 12/7/25, I visited the MO Hot Chicken ("MO") restaurant located at 825 W. Main Street, Lansdale, PA 19446, as a customer.

4.    While at MO, I observed that certain menu items and aspects of the service, in my personal opinion, appeared similar in style and presentation to items I am familiar with from Asad's based on my prior experiences as a customer.

5.      Specifically, MO offered a fries-based dish with chicken that, in my opinion, resembled a type of menu item I have previously ordered at Asad's. My observation is based only on appearance and general description, not on ingredients, preparation, or source.

6.      MO also uses item descriptions and spice level names that, in my opinion, appeared similar in general wording or theme to those used by Asad's. I do not have knowledge of how or why such names were chosen.

7.      In addition, the sauce offered at MO tasted similar to me, as a customer, to a sauce I have previously tasted at Asad's. The sauces were not exactly the same, and I have no knowledge of their ingredients, recipes, or methods of preparation.

8.      MO also offered a brioche-style chicken slider that, in my opinion, appeared similar in general format to a slider I have previously ordered at Asad's.

9.      Based solely on my personal experiences dining at both restaurants, I formed the personal opinion that some aspects of the food and service offered by MO are similar in general nature to those offered by Asad's. This opinion reflects only my individual perception as a customer.

10.      I certify under penalty of perjury that the foregoing statements reflect my honest observations and opinions, and that I have not knowingly made any false statement of fact.

_____
Jaeden Kim

Date: ___12/22/2025_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| The Box Investments LLC d/b/a Asad's Hot Chicken | : | CIVIL ACTION |
| v. | : | |
| Mohamed Emam, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| | | |
|---|---|---|
| 12/22/2025 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
- ☒ 16. All Other Federal Question Cases. *(Please specify)*:DTSA(18U.S.C.§§1836(b),1839)_____

*B. Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

THE BOX INVESTMENTS LLC
D/B/A ASAD'S HOT CHICKEN

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

MOHAMED EMAM, ET AL.

County of Residence of First Listed Defendant    Chester
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
Plaintiff
- ☒ 3   Federal Question
*(U.S. Government Not a Party)*
- ☐ 2   U.S. Government
Defendant
- ☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☒ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
DTSA (18 U.S.C. §§ 1836(b), 1839)

Brief description of cause: Violations of DTSA, PUTSA, Civil Conspiracy, Breach of Fiduciary Duty of Loyalty, Breach of Contract - Non-Competition, Breach of Contract - Confidentiality and Injunctive Relief.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE 12/22/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____